628 A.2d 840

**Patricia KEBLISH, Individually and as Administratrix of the Estate of Nicholas Keblish, Appellant,**

v.

**THOMAS EQUIPMENT, LTD.; J.D. Equipment; and Smitty's Rental, Inc.**

v.

**Elwood HOGARTH, Appellees.**

Superior Court of Pennsylvania.

Argued Feb. 18, 1993.

Filed June 4, 1993.

Reargument Denied Aug. 16, 1993.

94

Leonard A. Busby, Philadelphia, for appellant.

Eugene J. Maginnis, Philadelphia, for Thomas Equipment, appellee.

Gary B. Cutler, Philadelphia, for J.D. Equip. and Smitty's Rental, appellees.

Before BECK, POPOVICH and BROSKY, JJ.

POPOVICH, Judge:

This is an appeal from the Court of Common Pleas of Monroe County which granted the motion for judgment on the pleadings filed by appellee Smitty's Rental, Inc. The lower court reasoned that the Uniform Commercial Code, Article 2–Sales, breach of warranty provisions, see 13 Pa.C.S.A. §§ 2312–2318, did not apply to the one-day equipment lease at issue. We disagree with the lower court's reasoning and reverse the entry of judgment on the pleadings in favor of appellee Smitty's Rentals, Inc.

On June 28, 1987, defendant Elwood Hogarth entered into a contract with appellee Smitty's for the one-day rental of a front-end loader with a backhoe attachment which was manufactured by defendant Thomas Equipment, Ltd. On the following day, Smitty's delivered the front-end loader to Mr. Hogarth. An employee of Smitty's explained the operation of the machinery to Mr. Hogarth and Mr. Jim Fisher, whom Mr. Hogarth had hired to operate the front-end loader. Mr. Hogarth and Mr. Fisher used the heavy equipment without incident.

Following completion of their task, they parked the front-end loader on the property of Mr. Hogarth's neighbor, Nicholas Keblish, and left the keys in the ignition. Mr. Hogarth had obtained Mr. Keblish's permission to park the vehicle on his property to ease its retrieval by Smitty's since Mr. Hogarth's property was set back from the road. Mr. Hogarth then informed Smitty's that he was finished with the machinery. Later that afternoon, an employee of Smitty's arrived to retrieve the loader and found Mr. Keblish dead, crushed between the seat for the backhoe and the cab roof.

Decedent's widow, Mrs. Patricia Keblish (hereafter "appellant"), initiated this suit by writ of summons on June 28, 1991, one day less than four years of Mr. Keblish's death. In her complaint, appellant, in her own right and as administrator of decedent's estate, sought recovery under Pennsylvania's Wrongful Death Act, 42 Pa.C.S.A. § 8301, and Survival Act, 42 Pa.C.S.A. § 8302, for damages caused by the defendants' alleged breach of express and implied warranties which attached to the various transactions by which the Thomas front-end loader eventually came to be used by Mr. Keblish.

Smitty's filed an answer and new matter raising the affirmative defenses of comparative negligence, assumption of risk, lack of privity of contract, exclusion of warranties and statute of limitations. Following the completion of the pleadings, Smitty's filed a motion for judgment on the pleadings. Both Smitty's and appellant filed supporting briefs, and argument was held. Thereafter, the lower court, citing *Cucchi v. Rollins Protective Services,* 524 Pa. 514, 574 A.2d 565 (1990) (plurality), determined that the breach of warranty provisions of Article 2—Sales of the Uniform Commercial Code, see 13 Pa.C.S.A. §§ 2312–2318, did not apply to the one-day lease of the heavy equipment, and, therefore, appellant could not prevail as a matter of law. Judgment on the pleadings was then entered in favor of Smitty's. This appeal followed.

In *Kosor v. Harleysville Mut. Ins. Co.,* 407 Pa.Super. 68, 71–72, 595 A.2d 128, 129–130 (1991), we set forth the applicable standard of review as follows:

Entry of judgment on the pleadings is permitted under Pa.R.C.P. 1034 which provides for such judgment after the pleadings are closed, but within such time as not to delay trial. A motion for judgment on the pleadings is similar to a demurrer. *Karns v. Tony Vitale Fireworks Corporation,* 436 Pa. 181, 259 A.2d 687 (1969). It may be entered where there are no disputed issues of fact and the moving party is entitled to judgment as a matter of law. *Gallo v. J.C. Penney Casualty Insurance Co.,* 328 Pa.Super. 267, 476 A.2d 1322 (1984); *Vogel v. Berkley,* 354 Pa.Super. 291, 511 A.2d 878 (1986); *Groff v. Pete Kingsley Building, Inc.,* 374

Pa.Super. 377, 543 A.2d 128 (1988). In determining if there is a dispute as to facts, the court must confine its consideration to the pleadings and relevant documents. *DiAndrea v. Reliance Savings & Loan Association,* 310 Pa.Super. 537, 456 A.2d 1066 (1983). The scope of review on an appeal from the grant of judgment on the pleadings is plenary. We must determine if the action of the court below was based on a clear error of law or whether there were facts disclosed by the pleadings which should properly go to the jury. *Keystone Automated Equipment Co. v. Reliance Insurance Co.,* 369 Pa.Super. 472, 535 A.2d 648 (1988). See also, *Bensalem Township School District v. Commonwealth,* 518 Pa. 581, 544 A.2d 1318 (1988).

Accordingly, we will first review the lower court's decision regarding the inapplicability of Article 2–Sales of the Uniform Commercial Code to the lease transaction herein. In *Cucchi v. Rollins Protective Services,* 377 Pa.Super. 9, 32–34, 546 A.2d 1131, 1143 (1988), reversed on other grounds, 524 Pa. 514, 574 A.2d 565 (1990), a panel of this court held that "the express and implied warranty provisions of Article 2, specifically sections 2313 and 2314, apply by analogy to leases." In so ruling, the court reasoned: "We find that sale-lease distinction equally unimportant in the area of warranty law; for both leases and sales, there should be one body of warranty law. This will promote uniformity in dealing with commercial transactions whether they be cast in the form of a lease or a sale." *Id.,* 546 A.2d at 1143. On appeal to our Supreme Court, Justice Larsen, in his opinion announcing the judgment of the court, adopted the reasoning of this court and found that the warranty provisions of Article 2 of the Uniform Commercial Code as adopted in Pennsylvania, applied with equal force to sales and leases. *Cucchi,* 574 A.2d at 572. In addition, Justices Larsen and Papadakos found further support in applying the warranty provisions of Article 2–Sales to transactions involving the lease of goods in *proposed* Article 2A–Leases which essentially applies intact the warranty provisions of Article 2–Sales to lease transactions with only relatively minor adaptations. *Cucchi,* 574 A.2d at 573, 570–571.

■ However, the lower court herein determined that the warranty provisions did not apply by analogy to the one-day lease *sub judice*. In support of its decision, the lower court seized upon the language in Justice Larsen's opinion, wherein he stated: "We agree with the Superior Court and we will judicially extend by analogy selected provisions of Article 2/Chapter 21 to transactions involving the lease of goods on a *case by case* basis, considering the nature of the specific transaction (lease), the language, purpose, and intent of the U.C.C. provision under consideration, and the practicality of applying the particular provision(s) at issue to the particular transaction." *Cucchi*, 574 A.2d at 570 (Emphasis added). In so ruling, Justice Larsen adopted the following language from this court's decision in *Cucchi*, 546 A.2d 1131:

However, there are significant differences which make the outright extension of Article 2 to leases impractical. These differences include transfer of title, incidents of ownership, risk of loss, financial considerations, taxes, and bankruptcy proceedings. Faced with these differences and the fact that Article 2 was designed to govern *sales*, we cannot be certain that the impact of Article 2's provisions on leases would not be obscure or undesirable. In other words, we cannot be certain that we would not be justified in applying some provisions of Article 2 to sales and not to leases. To gain that certainty, we would have to examine each of Article 2's provisions. Given the impossibility of that task within one sweeping opinion, we would be remiss in holding Article 2 applicable to leases *in its entirety* at this time. Accordingly, we will analogize the provisions of Article 2 to leases only when the specific provision has been examined and the circumstances of the situation warrant the same treatment which is given to sales.

*Cucchi*, 574 A.2d at 569–570, quoting, *Cucchi*, 546 A.2d at 1141–1142.

In applying the above-quoted language, the lower court compared the facts of *Cucchi, supra,* to those before us. In *Cucchi, supra,* the transaction in question was the long-term lease of a burglar alarm system from Rollins Protective Ser-

vices. The lease also provided for continual service and maintenance of the alarm system. Eleven years after installation of the system the Cucchis' home was burglarized, and the system malfunctioned. The Cucchis then filed suit against Rollins to recover their losses. In their complaint, the Cucchis. alleged Rollins breached express and implied warranties. In deciding that Article 2's warranty provisions applied to the long-term lease transaction, this court and Justices Larsen and Papadakos reasoned that there is no logical reason to differentiate between true leases, leases that are the functional equivalent of sales and actual sales where warranties are concerned. See *Cucchi*, 574 A.2d at 568–571; *Cucchi*, 546 A.2d at 1142–1143.[1]

■ Presently, the lower court found that the long-term nature of the lease in *Cucchi, supra*, distinguished it factually from the one-day lease of the Thomas front-end loader, and, therefore, the warranty provisions were held inapplicable. However, the holding of this court's decision in *Cucchi, supra*, does not authorize different treatment for different types of lease transactions where the warranty provisions are concerned. Rather, *the warranty provisions are applicable to all lease transactions.* Further support for this ruling is gained from the fact that the proposed extension of warranty provisions to leases set forth in Article 2A of the U.C.C. does not distinguish lease transactions based upon their duration.[2] The "case-by-case" analysis set forth in both *Cucchi* decisions is necessary only to determine whether a specific provision of

1. Although agreeing with this court's decision that the warranty provisions of Article 2–Sales applied by analogy to lease transactions, Justice Larsen and Papadakos found error in this court's determination that the Cucchis' cause of action was barred by the applicable four year statute of limitation. 13 Pa.C.S.A. § 2725. *Cucchi*, 574 A.2d at 574–575.

2. In the Uniform Commercial Code Modernization Act, Act No. 1992–97, effective July 9, 1993, our Legislature has made significant changes to Pennsylvania's version of the U.C.C. For our purposes, the most significant change is the addition of Article 2A, Leases, to be codified at 13 Pa.C.S.A. § 2A101 *et seq.* We note that adopted in the Act were the warranty provisions for leases and the statute of limitation for leases in essentially the same form as those for sales applied by analogy herein. See Purdons Legislative Service, 1992, No. 5, pp. 397–399, 412.

Article 2–Sales—*which has not heretofore been extended by analogy to leases*—should be applied to lease transactions. *See Cucchi,* 574 A.2d at 569–570, quoting *Cucchi,* 546 A.2d at 1141–1142. Accordingly, we find that the lower court erred when it refused to apply the warranty provisions of Article 2 to the one-day lease of the Thomas front-end loader.[3]

Having determined that the lower court erred when it declined to apply the warranty provisions of Article 2–Sales to this lease transaction, we turn to Smitty's argument that other legal grounds exist to support the entry of judgment on the pleading. In related arguments, Smitty's first argues that Mr.

3. We note that our Supreme Court's decision in *Cucchi, supra,* is a plurality opinion, although Justice Larsen's opinion was referred to as the "majority opinion." *See Uniform Commercial Code–Pennsylvania Applies Article 2 Warranty Provisions to Personal Property Lease Transactions–Cucchi v. Rollins Protective Services Co., 524 Pa. 514, 574 A.2d 565 (1990),* 64 Temp.L.Rev. 355 (1991). Justice Larsen was joined by Justice Papadakos only. Chief Justice Nix who was joined by Justice Flaherty concurred in the result reached by Justice Larsen, but criticized his opinion, stating: "[T]he provisions of the U.C.C. were irrelevant to this transaction which was a contract for the sale of a service, not a contract for the lease or sale of the equipment." *Cucchi,* 574 A.2d at 575 (Concurring opinion by Nix, C.J.). Thus, Chief Justice Nix and Justice Flaherty did not address upon the issue of whether the Article 2 warranty provisions applied to leases. Justice Zappala who was joined by Justices McDermott and Cappy wrote:
    The majority has been persuaded that judicial wisdom dictates that Chapter 21 of the Uniform Commercial Code–Sales, 13 Pa.C.S.A. §§ 2101–2725, be extended to leases of goods—a "wisdom" that has not yet befallen the Legislature, as the majority recognizes by its statement that the revisions proposed by Article 2A have not yet been enacted in Pennsylvania. While I do not expect my words to dissuade the majority from doing what the Legislature has not seen fit to so, I must state that I find it unwise to effect sweeping changes in lease transactions merely because the judiciary is impatient with the Legislature's failure to do so. At the very least, individuals and businesses are entitled to know what legal consequences may arise from lease transactions. Legislation would provide this; judicial decisions affecting transactions made prior to their pronouncements would not.
    *Cucchi,* 574 A.2d at 576 (Dissention opinion by Zappala, J.).
    Justice Cappy also wrote separately to criticize Justice Larsen's judicial extension of Article 2 to leases. Since no clear majority was reached as to the question of whether Article 2's warranty provisions should be extended to leases, we must follow our prior decision which directs such extension by analogy to occur. *See, Mt. Lebanon v. County Board of Elections,* 470 Pa. 317, 368 A.2d 648 (1977).

Keblish was not a foreseeable user of the equipment, and, second, that the front-end loader was not unreasonably dangerous for the intended user. Therefore, Smitty's submits that appellant is not entitled to pursue a breach of warranty claim.

We reject Smitty's arguments. First, it is clear that the concepts of vertical and horizontal privity have been abolished in assumpsit cases brought under the Uniform Commercial Code. *See, Williams v. West Penn Power Co.*, 502 Pa. 557, 565–570, 467 A.2d 811, 815–817 (1983); *Kassab v. Central Soya*, 432 Pa. 217, 246 A.2d 848 (1968) (abolishes vertical privity in U.C.C. cases); *Salvador v. Atlantic Steel Boiler Co.*, 457 Pa. 24, 319 A.2d 903 (1974) (abolishes horizontal privity in U.C.C. cases). Thus, the decedent and appellant would be entitled to the protection of any warranties which attached to the front-end loader.[4]

Similarly, Smitty's is not entitled to judgment on the pleadings on the grounds that the product was not unreasonably dangerous for the "intended user". The proper question to be considered is whether the front-end loader was "fit for the ordinary purposes for which such [equipment was] used". 13 Pa.C.S.A. § 2314; 13 Pa.C.S.A. § 2315; *Keirs by Keirs v. Weber Nat. Stores, Inc.*, 352 Pa.Super. 111, 117–120, 507 A.2d 406, 409–410 (1986). Thus, we are presented with the factual question of whether there was a design or manufacturing defect in the front-end loader. *Altronics of Bethlehem, Inc. v. Repco, Inc.*, 957 F.2d 1102 (3rd Cir.1992) (interpreting Pennsylvania warranty law). Instantly, there remains a dispute as to this question of defect which should be left to the jury, and, accordingly, judgment on the pleadings is inappropriate as to this issue. *Kosor*, 595 A.2d at 128–129 (standard of review for judgment on the pleadings).

4. Further, assuming Smitty's argument was correct, judgment on the pleadings would still not be proper, since there may be a factual dispute over whether Mr. Keblish was a "foreseeable" or "intended" user of the front-end loader given the fact that the equipment was parked on his property with the keys in the ignition. See *Kosor*, 595 A.2d at 128–129 (standard of review for judgment on the pleadings).

■ Smitty's also contends that judgment on the pleadings is appropriate because the lease specifically limited the warranties provided. The equipment lease in question provided: "ALL TOOLS AND EQUIPMENT ARE LEASED UNDER AND SUBJECT TO THE FOLLOWING CONDITIONS AND COVENANTS ... 5. Lessor makes no warranties, express or implied, regarding either the use or operation of any property or that the use of such property is fit for any specified or intended purpose by Lessee."

It is certainly possible for a party to limit the express and implied warranties applicable to the contract. 13 Pa.C.S.A. § 2316 expressly provides for the limitation of warranties and, in pertinent part, reads as follows:

**(b) Implied warranties or merchantability and fitness.—** Subject to subsection (c), to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous. Language to exclude all implied warranties of fitness is sufficient if it states, for example, that "There are no warranties which extend beyond that description of the face hereof."

*See also, Moscatiello v. Pittsburgh Contr. Equip.,* 407 Pa.Super. 363, 368–369, 595 A.2d 1190, 1193 (1991).

Upon review, we find that the warranty disclaimer herein is not enforceable. First, nowhere in the disclaimer of warranty set forth in paragraph 5 of the lease is the term "merchantability" mentioned. Therefore, the requirements of 13 Pa. C.S.A. § 2316(b) have not been met with regard to the implied warranty of merchantability, and the disclaimer of that particular warranty is void. Further, the warranty disclaimer was imbedded within the body of the contract and was set forth in the same size print as the remainder of the contract language. In no way was the language in question highlighted or emphasized. Thus, we cannot conclude as a matter of law that the language was "conspicuous" such that the implied warranty of fitness was properly disclaimed pursuant to 13 Pa.C.S.A.

§ 2316(b). *Moscatiello,* 595 A.2d at 1193 ("A term of clause is 'conspicuous' when it is 'so written that a reasonable person against whom it is to operate ought to have noticed it ... Language in the body of a form is conspicuous if it is in larger or other contrasting type of color....' 13 Pa.C.S.A. § 1210."). Accordingly, we also find that Smitty's has not properly disclaimed the implied warranties of fitness.

■ Smitty's further argues that appellant cannot recover on her breach of warranty cause of action because of the indemnity and hold harmless clause of the lease agreement which is set forth in paragraph 11 as follows:

Lessee shall indemnify and hold harmless the lessor against all loss, damage, expense, claims or actions arising from any injuries to person or property of any character occasioned by the operation, handling or transportation of the leased property during the term of the lease, and while the property is in the possession or control of the lessee.

In other words, Smitty's contends that if appellant prevails on a breach of warranty claim against Smitty's, then she would be required to indemnify Smitty's for those damages which Smitty's was required to pay her. Such an absurd and unconscionable interpretation of that clause cannot be permitted to stand. See 13 Pa.C.S.A. § 2719(c) ("Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not.").

Clearly, a breach of warranty cause of action is "occasioned by the operation, handling or transportation of leased property" *only* to the extent that the operation of the front-end loader precipitated the injury. Although decedent did operate the front-end loader, it is not a foregone conclusion that his own negligence caused his death. The breach of warranty cause of action is based upon Thomas Equipment's and Smitty's action of placing, in the stream of commerce, a good which *allegedly* is not fit for the ordinary purpose to which the good

will be put, i.e., excavation. Certainly, to the extent that the decedent's death was caused by his own negligent actions, the indemnity clause would apply. However, it would be unconscionable to apply the indemnity clause with equal force to bar the breach of warranty claims which are based solely on the acts of the manufacturer and supplier of the product—acts over which decedent had no control.

In sum, we find that the breach of warranty provisions of Article 2—Sales of the Uniform Commercial Code apply with equal force to lease transactions, pursuant to this court's decision in *Cucchi v. Rollins Protective Services*, 377 Pa.Super. 9, 32–34, 546 A.2d 1131, 1143 (1988), reversed on other grounds, 524 Pa. 514, 574 A.2d 565 (1990). In addition, Smitty's has failed to demonstrate that there are no issues of material fact and that they are entitled to judgment as a matter of law. Therefore, we reverse the decision of the court below and remand for further proceedings.

Order reversed. Case remanded. Jurisdiction relinquished.