**Gary and Marie GOODMAN, Individually and on Behalf of All Other Similarily Situated, Appellants,**

v.

**PPG INDUSTRIES, INC., Appellee.**

Superior Court of Pennsylvania.

Argued Sept. 16, 2003.
Filed April 29, 2004.

Steven A. Schwartz, Haverford, for appellants.

James R. Miller, Pittsburgh, for appellee.

Before: LALLY–GREEN, TODD, and TAMILIA, JJ.

LALLY–GREEN, J.

¶ 1 Appellants, Gary and Marie Goodman, appeal from the order dated January 27, 2003, dismissing their class action complaint against PPG Industries, Inc. ("PPG"). We affirm.

¶ 2 The factual and procedural history of the case is as follows. PPG sold a wood preservative called TBTO PILT ("PILT") to Marvin Lumber and Cedar Company ("Marvin"). Marvin makes custom-built wood-framed doors and windows for residential customers. Appellants represent a class of residential customers who purchased PILT-treated products from Marvin between 1985 and 1989. Appellants alleged that their homes incurred substantial damage when PILT failed to protect their doors and windows from wood rot.

¶ 3 Appellants filed a class action against PPG.[1] Appellants' complaint sets forth only one cause of action: "Breach of Express Warranty of Future Performance." The relevant allegations of the complaint are as follows. PPG promised Marvin that PILT would protect the wood for at least 26 years (longer than PENTA, the preservative that Marvin was currently using). Complaint, ¶ 49. Marvin relied on this representation, and began using PILT in its windows. Marvin marketed its windows and doors to the class. Relying on PPG's express warranty to Marvin, Marvin asserted to the class that the doors and windows were treated to "permanently protect against rot and decay." PILT failed to protect the windows adequately. Specifically, Marvin's customers began to experience wood rot that was both premature and abnormally rapid. PPG knew that Appellants and members of the proposed class would use, consume, or be affected by PPG's defective PILT used in Marvin windows and doors, and would be injured as a result of PPG's failure to honor its warranty of future performance. *Id.* at ¶ 50. Appellants seek "compensatory relief from PPG for all damages suffered by owners of Marvin PILT windows

---

1. The instant dispute has been the subject of two prior lawsuits. First, Marvin's unsatisfied customers filed a class action in Minnesota against Marvin. This litigation has settled. According to Appellants, the settlement figure was insufficient to cover all of the customers' losses. Second, Marvin successfully recovered $135 million in a lawsuit against PPG. According to Appellants, "none of these damages will compensate class members for the relief sought herein." Complaint, ¶ 8.

and doors as a result of defects in the PILT preservative and PPG's failure to make good on its warranty of future performance that PILT would be effective in preventing wood rot for at least 26 years and that it would outlast PENTA." *Id.* at ¶ 9.

¶ 4 Appellants do not allege that PPG ever made an express warranty to Appellants themselves. Indeed, nothing in the complaint indicates that PPG or Marvin transmitted to Appellants any of the explicit terms of PPG's express warranty (*i.e.*, that PILT would protect against wood rot for at least 26 years). Appellants do not allege that Marvin mentioned the existence of PPG, or the existence of an express 26–year warranty, anywhere in Marvin's promotional literature.

¶ 5 PPG filed preliminary objections in the nature of a demurrer. The essence of PPG's defense was that it never sold any product to Appellants, never communicated with Appellants, and never issued any warranty to Appellants. PPG argued that because it made no express warranty to the consumers, as a matter of law PPG could not be found liable to Appellants for breach of express warranty.[2]

¶ 6 In an opinion dated January 27, 2003, the trial court dismissed Appellants' claim with prejudice. The trial court reasoned that under the express warranty provision in 13 Pa.C.S.A. § 2313, "there must be some affirmation of fact from the seller to the buyer relating to the goods purchased." Trial Court Opinion, 1/27/03, at 3. The trial court rejected Appellants' claim because "there is simply no allega-

tion that any affirmation of fact or promise was made to Plaintiffs by PPG[.]" *Id.*

¶ 7 The trial court addressed Appellants' counter-argument that privity of contract is no longer required in warranty actions. The court reasoned as follows:

> Lack of privity between the manufacturer and the ultimate consumer in the actual sales transaction is irrelevant. Even in the absence of privity in the sales transaction, however, there must be some expression of the warranty to the purchaser by the manufacturer for an express warranty to be created.

*Id.* at 4–5. In short, the trial court rejected Appellants' claim because they could not allege that PPG ever made any express warranty directly to Appellants. *Id.* at 5–6. This appeal followed.[3]

¶ 8 Appellants raise three issues on appeal:

1. If a seller makes an express warranty to a buyer, knowing (1) that the product will be purchased and ultimately used by a downstream consumer; and (2) that the buyer will market that product to the ultimate consumer based on the seller's express warranty, can the ultimate consumer recover damages from the seller when the product fails, under the express warranty provisions of 13 Pa.C.S.A. § 2–313?

2. If a seller's express warranty is made to a buyer, knowing (1) that the product will be purchased and ultimately used by a downstream consumer; and (2) that the buyer will market that product to the ulti-

---

2. A corollary to PPG's argument is that the consumers could not establish that PPG's warranty formed part of the "basis of the bargain" between PPG and the consumers. PPG also argued that the customers failed to provide proper notice of the lawsuit, and that

there was no privity of contract between PPG and the customers.

3. The trial court did not order Appellants to file a Concise Statement of Matters Complained of on Appeal under Pa.R.A.P.1925, and did not issue a Rule 1925 opinion.

mate consumer based on the seller's express warranty, can the seller's express warranty be the "basis of the bargain" for the purposes of the ultimate consumer's claim against the seller under the express warranty provisions of 13 Pa.C.S.A. § 2–313?

3. Whether the Pennsylvania Supreme Court has abolished any vertical privity requirement for breach of express warranty claims?

Appellant's Brief at 4. Appellants accurately and cogently describe the key issue in this case as follows:

The precise question raised in this Appeal is whether the ultimate consumer can enforce an express warranty made by the original manufacturer to an intermediate seller, even if the manufacturer did not directly communicate that warranty to the ultimate consumer. [T]he Pennsylvania Appellate Courts have not had the opportunity to squarely address this precise fact pattern[.]

*Id.* at 11.

■■■ ¶ 9 Our standard of review is well settled.

When reviewing the dismissal of a complaint based upon preliminary objections in the nature of a demurrer, we treat as true all well-pleaded material, factual averments and all inferences fairly deducible therefrom. Where the preliminary objections will result in the dismissal of the action, the objections may be sustained only in cases that are clear and free from doubt. To be clear and free from doubt that dismissal is appropriate, it must appear with certainty that the law would not permit recovery by the plaintiff upon the facts averred. Any doubt should be resolved by a refusal to sustain the objections. Moreover, we review the trial court's decision for an abuse of discretion or an error of law.

*DeFazio v. Gregory,* 2003 PA Super 418, ¶ 6, 836 A.2d 935 (citation omitted).

■■■ ¶ 10 First, we examine the express warranty provisions of Pennsylvania's Commercial Code. Section 2–313 reads as follows:

Express warranties by the seller **are created** as follows:

(a) any affirmation of fact or promise made **by the seller to the buyer** which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

13 Pa.C.S.A. § 2313 (emphasis added). The Official Comment to Section 2313 indicates that " 'express' warranties rest on 'dickered' aspects of the individual bargain[.]" Official Comment, ¶ 1. In other words, § 2313 "deals with affirmations of fact by the seller, descriptions of the goods or exhibitions of samples, exactly as any other part of a negotiation which ends in a contract is dealt with." *Id.* at ¶ 3. Such warranties may, and often do, extend beyond the "bare-bones" warranty of merchantability which is implied by law for consumer protection purposes. Given that express warranties are specifically negotiated (rather than automatically implied by law), it follows that to create an express warranty, the seller must expressly communicate the terms of the warranty to the buyer in such a manner that the buyer understands those terms and accepts them. *See,* Official Comment at ¶ 4 ("the whole purpose of the law of warranty is to determine what it is that that the seller has in essence agreed to sell[.]")

■■ ¶ 11 In the instant case, Appellants do not allege that PPG entered into an

express warranty directly with Appellants. Indeed, PPG never communicated its **identity** to Appellants, let alone the terms of any express warranty. Moreover, it cannot be said that PPG entered into an express warranty with Appellants by using Marvin as an intermediary.[4] Again, Marvin never indicated to Appellants that PPG was issuing a warranty of any kind; moreover, Marvin never communicated the specific terms of this 26–year warranty to Appellants. Thus, we conclude that PPG did not create an express warranty with Appellants.

■ ¶ 12 This is not the end of the inquiry, however. It is undisputed that PPG (the "seller") created an express warranty with **Marvin** (the "buyer") by promising Marvin that PILT would be effective for at least 26 years. A question remains as to whether Appellants may enforce the warranty created between PPG and Marvin. Section 2313, set forth above, is silent on this issue. The Official Comment to § 2313 emphasizes this fact:

> Although this section is limited in its scope and direct purpose to warranties made by the seller to the buyer as part of a contract for sale, **the warranty sections of this Article are not designed in any way to disturb those lines of case law growth which have recognized that warranties need not be confined either to sales contracts or to the direct parties to such a contract.** They may arise in other appro-

priate circumstances such as in the case of bailments for hire, whether such bailment is itself the main contract or is merely a supplying of containers under the contract for the sale of their contents. **The provisions of Section 2–318 on third party beneficiaries expressly recognize this case law development within one particular area.** Beyond that, the matter is left to the case law with the intention that the policies of this Act may offer useful guidance in dealing with further cases as they arise.

13 Pa.C.S.A. § 2313, Official Comment, ¶ 2.

¶ 13 In other words, § 2–318 of the Uniform Commercial Code (13 Pa.C.S.A. § 2318) and case law govern the question of who, other than the immediate buyer, may enforce express warranties. Section 2318 reads as follows:

§ **2318. Third party beneficiaries of warranties express or implied.**

The warranty of a seller whether express or implied extends to any natural person who is in the family or household of his buyer or who is a guest in his home if it is reasonable to expect that such person may use, consume or be affected by the goods and who is injured in person by breach of the warranty. A seller may not exclude or limit the scope of this section.

18 Pa.C.S.A. § 2318. This section, on its face, does not apply because Appellants are not in the family or household of Marvin, a commercial entity.[5] *See, Johnson v.*

4. We will assume *arguendo* that it is possible for a seller to enter into an express warranty with a buyer through an intermediary under appropriate circumstances.

5. Unfortunately for Appellants, the Legislature has chosen the most restrictive of the three alternatives provided by the drafters of the Uniform Commercial Code. In contrast, the most expansive of the three alternatives reads as follows: "A seller's warranty whether express or implied extends to any person who may reasonably be expected to use, consume or be affected by the goods and who is injured by breach of the warranty. A seller may not exclude or limit the operation of this section with respect to injury to the person of an individual to whom the warranty extends." 1A U.C.C. (U.L.A.) § 2–318 (Alternative C) at 53 (1976). If the Legislature had adopted this alternative, Appellants would have a much stronger argument that they may enforce PPG's express warranty to Marvin.

*General Motors Corp.,* 349 Pa.Super. 147, 502 A.2d 1317 (1986), *appeal denied,* 514 Pa. 639, 523 A.2d 346 (1987), *overruled on other grounds in REM Coal Co. v. Clark Equipment Co.,* 386 Pa.Super. 401, 563 A.2d 128 (1989)(*en banc*). Moreover, the section does not apply on its face because Appellants were not personally injured. *Id.* Again, however, this does not end the inquiry because the Official Comment to Section 2318 provides:

> The first alternative [the one selected by the Pennsylvania Legislature] expressly includes as beneficiaries within its provisions the family, household, and guests of the purchaser. Beyond this, the section in this form is neutral and is not intended to restrict the developing case law on whether the seller's warranty, given to his buyer who resells, extend to other persons in the distributive chain.

13 Pa.C.S.A. § 2318, Official Comment, ¶ 3. In other words, developing case law may extend the Commercial Code's warranty protections to those outside the narrow class of persons enumerated in § 2318. *Salvador v. Atlantic Steel Boiler Co.,* 457 Pa. 24, 319 A.2d 903 (1974).

¶ 14 Case law has developed and matured in Pennsylvania with respect to the class of people who may sue and be sued for breach of **implied** warranty. Specifically, our Supreme Court has long held that, for breach of the implied warranty of merchantability, anyone injured by the defective product may sue, and anyone in the distributive chain may be sued. *See, Williams v. West Penn Power Co.,* 502 Pa. 557, 467 A.2d 811 (1983) (setting forth the history of the "assault on privity" in Pennsylvania); *Salvador, supra; Kassab v. Central Soya,* 432 Pa. 217, 246 A.2d 848 (1968), *overruled on other grounds in AM/PM Franchise Ass'n v. Atlantic Richfield Co.,* 526 Pa. 110, 584 A.2d 915 (1990). This is true because, given the adoption of strict products liabili-

ty rules in Pennsylvania, manufacturers and sellers are now guarantors of the basic safety of products placed in the stream of commerce. *Salvador,* 319 A.2d at 906. Similarly, implied warranties are implied by law to "protect buyers from loss where goods purchased are below commercial standards or unfit for the buyer's purpose." *Turney Media Fuel, Inc. v. Toll Bros.,* 725 A.2d 836, 840 (Pa.Super.1999); 13 Pa.C.S.A. § 2314. Our Supreme Court harmonized the rules governing implied warranty claims with the rules governing products liability claims, because the two types of actions are now substantially similar. *Salvador,* 319 A.2d at 907–908.

¶ 15 The same considerations do not necessarily hold true with respect to the type of **express** warranty at issue in the instant case. As noted above, implied warranties are imposed by law to ensure a minimum standard of product quality and fitness, for the protection of the general public. Aside from disclaiming the warranty in a manner prescribed by law, manufacturers have no choice but to extend implied warranties to the general public. *See, Keblish v. Thomas Equip.,* 427 Pa.Super. 93, 628 A.2d 840 (1993), *reversed on other grounds,* 541 Pa. 20, 660 A.2d 38 (1995). In contrast, as noted above, express warranties are bargained, "dickered," individualized promises that the goods will perform up to the specific standards set forth in that warranty. 13 Pa. C.S.A. § 2313, Official Comment, ¶ 1. In our view, a manufacturer who is willing to make a specific and ambitious express warranty (such as the one in the instant case) must be able to retain some measure of control over both the class of people to whom it is willing to extend the warranty, and the precise parameters of the warranty that it will be obliged to honor. Similarly, given that express warranties are based on the notion of offer and accep-

tance, it would appear incongruous to allow third parties the benefit of an express warranty when no evidence exists that they were aware of the terms of the warranty or the identity of the party issuing the warranty. Thus, in order to preserve the unique character of express warranties, we hold that third parties may enforce express warranties only under circumstances where an objective fact-finder could reasonably conclude that: (1) the party issuing the warranty intends to extend the specific terms of the warranty to the third party (either directly, or through an intermediary); and (2) the third party is aware of the specific terms of the warranty, and the identity of the party issuing the warranty.[6]

¶ 16 The express warranty in the instant case went beyond the implied warranty of merchantability, and specifically provided that PILT would protect against wood rot for at least 26 years. Moreover, this specific warranty formed a basis of the bargain between PPG and Marvin, insofar as it induced Marvin to switch from PENTA to PILT. Here, however, it is clear that PPG extended its warranty only to Marvin. PPG did not extend its express warranty to Appellants, either directly, or indirectly through an intermediary. Finally, Appellants were not aware of the specific

26-year warranty that they now seek to enforce, and were not aware when they purchased their Marvin products that PPG had ever issued a warranty. Under the facts of this case, we conclude that Appellants cannot as a matter of law maintain their action for breach of express warranty against PPG. Accordingly, we affirm the order dismissing Appellants' complaint.[7]

¶ 17 Order affirmed.

¶ 18 Judge TODD files a Concurring Statement.

TODD, J., Concurring.

¶ 1 I concur in the result reached by my learned colleagues. While the Majority provides a scholarly analysis, and while I agree that the law of express warranties vis-à-vis third-party beneficiaries—as set forth in Sections 2313 and 2318 of Pennsylvania's Commercial Code, 13 Pa.C.S.A. §§ 2313, 2318, cited by the Majority—does not permit the extension of the express warranty in this case to Appellants, I would end our analysis there. As any expansion of the ability of third parties to enforce express warranties involves a pronouncement of the evolving public policy of the Commonwealth, I would leave such

6. Nothing in this opinion should be construed as resurrecting a privity requirement. As the trial court cogently noted, issues of privity are irrelevant. Our Supreme Court and this Court have consistently held that under the Pennsylvania Commercial Code, privity of contract is not required between the party issuing a warranty and the party seeking to enforce the warranty. *Salvador; Kassab; Keblish.* In other words, if the facts of this case had been significantly different, Appellants might have been able to enforce PPG's 26-year warranty, even though there was no privity of contract between Appellants and PPG.

7. Despite general allegations in the complaint that PILT was defective, we note that Appel-

lants have **not** attempted to set forth causes of action for products liability, breach of the implied warranty of merchantability, or breach of the implied warranty of fitness for a particular purpose. Moreover, Appellants have not argued that they should be permitted to amend their complaint to include such causes of action. Rather, it would appear that Appellants are relying solely on their cause of action for breach of express warranty: *i.e.,* PPG's express warranty that PILT would protect against wood rot for at least 26 years. Under these circumstances, we decline to order a remand to allow Appellants to amend their complaint to assert different causes of action.

deliberations to our Supreme Court, or the Legislature.