705 S.E.2d 131

Scott McMAHON and Karen Jones, individually, and on behalf of and others similarly situated, Plaintiffs Below, Respondents

v.

ADVANCE STORES COMPANY, INCORPORATED, d/b/a Advance Auto Parts and Donn Free, Defendants Below, Petitioners.

No. 35467.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 15, 2010.

Decided Nov. 24, 2010.

Ancil G. Ramey, Esq., Steptoe & Johnson, PLLC, Charleston, WV, Karen E. Kahle, Esq., Steptoe & Johnson, PLLC, Wheeling, WV, for Petitioners.

Joseph J. John, Esq., John Law Office, Anthony I. Werner, Esq., Bachmann Hess Bachmann & Garden, Wheeling, WV, for Respondents.

Jeffrey A. Holmstrand, Esq., McDermott & Bonenberger, PLLC, Wheeling, WV, Eric L. Silkwood, Flaherty Sensabaugh Bonasso, PLLC, Charleston, WV, for Amicus Curiae, Defense Trail Counsel of West Virginia.

Alvin L. Emch, Esq., Pamela D. Tarr, Esq., Jackson & Kelly, PLLC, Charleston, WV, for Amici Curiae, West Virginia Retailers Association and West Virginia Manufacturers Association.

BENJAMIN, Justice:

This matter is before the Court upon a certified question from the Circuit Court of Ohio County. The certified question is as follows:

Does W. Va.Code § 46A–6–108(a) apply to suits for breach of limited warranty by subsequent purchasers where the limited warranty involved limits its availability to original purchasers?

The circuit court answered this question in the affirmative. Upon review of the parties' briefs[1], the arguments of the parties and the record, we answer the certified question in the negative and remand this matter for further proceedings consistent with this opinion.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

This certified question arises from the respondent Scott McMahon's purchase of a new Autocraft car battery from the petitioner Advance Stores Company Incorporated, d/b/a Advance Auto Parts (hereinafter referred to as Advance). Mr. McMahon purchased the battery from the Advance store in Weirton, West Virginia, on or about March 2, 2004. McMahon received a receipt from his purchase that indicated that the battery cost approximately $49. Indicated on the receipt was an acknowledgment of an express warranty between Advance and the purchaser. Printed on the receipt was the statement "24 month free replacement, 72 month pro-rated." At the bottom of the receipt was a statement directing the purchaser to Advance's website where the limited express warranty information was available. This limited warranty information was also available to the purchaser at the store. The receipt also noted that the receipt was required for all returns. Advance's express warranty, stated, in pertinent part, as follows:

Advance Auto Parts Limited Warranty Policy

BATTERIES

OUR GUARANTEE

We will replace any battery we sell, should it fail due to defects in materials or workmanship, under normal installation, use, and service, while under warranty. This warranty does not cover the exceptions listed below under "WHAT IS NOT COVERED."

LENGTH OF WARRANTY

Your warranty begins the day you purchase the battery, and expires at the end of the warranty period printed on your original receipt, or when you sell your vehicle, whichever comes first.

FREE REPLACEMENT PERIODS

Your free replacement period begins the day you purchase the battery, and expires at the end of the "Free Replacement Period" printed on your original receipt, or when you sell your vehicle, whichever occurs first.

\* \* \*

WHAT IS NOT COVERED

This warranty does not cover: failure due to misuse, abuse, modification, accident or collision, or improper installation. THIS WARRANTY DOES NOT COVER INCIDENTAL OR CONSEQUENTIAL DAMAGES SUCH AS PHYSICAL INJURIES, PROPERTY DAMAGE, LOSS OF TIME,

---

1. We wish to acknowledge the Amicus briefs filed by the Defense Trial Counsel of West Virginia, the West Virginia Retailers Association and West Virginia Manufacturers Association, all of which were in support of the position asserted by the petitioners, Advance Stores Company, Incorporated, and Donn Free.

LOSS OF USE OF THE VEHICLE, IN-
CONVENIENCE, RENTAL VEHICLE,
TOWING CHARGES, OR ACCOMMO-
DATIONS RESULTING FROM THE
FAILURE OF THE BATTERY.

### WHAT YOU MUST DO

You must take the defective battery and
the purchase receipt therefore, to an Ad-
vance Auto Parts store during normal
business hours. If "proration" applies and
Advance Auto Parts does not refund the
prorated purchase price, you must pay the
difference between the cost of a new bat-
tery and the amount of the proration when
you receive your new battery, plus any
taxes.

### LEGAL

This limited warranty represents the total
liability of Advance Auto Parts for any
part it warrants. Advance Auto Parts
makes no other warranties expressed or
implied, including the warranties of mer-
chantability and fitness for a particular
purpose. Some states to not allow limita-
tions on how long an implied warranty
lasts, so the above information may not
apply to you. This warranty gives you
specific rights and you may have other
rights, which vary from state to state. Ad-
vance Auto Parts does not authorize any
person to vary the terms, conditions, or
exclusions of this warranty.

In September of 2004, after the purchase
of this battery but within the 24–month time
period during which the battery could be
replaced under the express warranty, McMa-
hon sold the Jeep into which the Advance
battery had been placed. The purchaser of
the Jeep was Karen John. In January, 2005,
the Advance battery quit working, and on
January 20, 2005, John's husband, Joseph,[2]
and the respondent Karen John, went to an
Advance store to inquire about the warranty
on the battery. At this time they were told
that nothing could be done under the warran-
ty without a receipt. They then purchased a
new Autocraft battery on that day. McMa-
hon later provided the original receipt to
Karen John, who passed it along to her
husband who presented it to Advance on
February 8, 2005, for action on the express
warranty. The petitioner, Donn Free, the
manager of the Advance Auto Parts store,
advised John that because he was not the
original purchaser of the battery, he was not
entitled to relief under the limited express
warranty. McMahon then reimbursed John
for the cost of the battery.

Not satisfied with Advance's response to
his request, McMahon instituted suit against
Advance and Donn Free, the employee with
whom McMahon and John dealt on the re-
fund issues. McMahon sued the petitioners
for their failure to honor the express limited
warranty. In a four-count complaint, McMa-
hon alleged that the petitioners had breached
the express warranty by failing to replace
the battery; had breached the implied war-
ranty of merchantability; had engaged in
fraud by never telling McMahon that the
limited express warranty applied only to the
original purchaser; and had violated West
Virginia consumer protection laws. McMa-
hon sought damages for annoyance, incon-
venience and aggravation; replacement cost
of the battery and expenses incurred in at-
tempting to have the warranty honored; at-
torney fees and litigations expenses; dam-
ages allowed by the Consumer Protection
Act; and incidental and consequential dam-
ages. A jury trial was requested.

After the filing of the complaint, McMahon
sought to amend his complaint and to certify
the action as a class action. The complaint
was then amended to include Karen John as
a named plaintiff. At one point the case was
removed to the United States District Court
for the Northern District of West Virginia
but was remanded to state court. Discovery
ensued and the parties filed various motions
and pleadings throughout the proceedings.
The respondents filed a motion for summary
judgment, requesting "this court to test the
policy of the Defendant, Advance Stores
Company, Inc., d/b/a Advance Auto Parts
(hereinafter Advance), relating to warranties
attached to the sale of its motor vehicle
batteries." On February 20, 2008, the circuit
court granted partial summary judgment to
the respondents, stating, *inter alia:*

---

2. Joseph J. John is also counsel to the respon- dents, Scott McMahon, and Karen John.

West Virginia has abolished the concept of both vertical and horizontal privity in a series of cases with the seminal opinions being *Dawson v. Canteen Corp.*, Syllabus 158 W.Va. 516, 212 S.E.2d 82 (1975), and *Sewell v. Gregory*, 371 S.E.2d 82, 179 W.Va. 585. (Footnote omitted).

Thus, independently of any statutory provisions, this Court has evolved the remedy of breach of implied warranty of fitness. Accordingly, Advance shall be required to abide by its warranty notwithstanding the person attempting to assert the warranty may not have been the original purchaser. The Plaintiffs' Motion for Summary Judgment is hereby granted.

On February 27, 2008, the petitioners sought entry of a final appealable order pursuant to Rule 54(b) of the West Virginia Rules of Civil Procedure,[3] as well as certification of a question regarding batteries. Discovery continued, and both parties sought protective orders. On November 14, 2008, the petitioners moved the Court to reconsider its earlier grant of partial summary judgment. On December 5, 2008, the circuit court made the following findings of fact and granted summary judgment to the respondents:

> The Plaintiff, Scott McMahon, purchased a car battery from Advance which contained a twenty-four (24) month free replacement/seventy-two (72) month pro-rated warranty in the event the battery was defective. McMahon installed the battery in a motor vehicle which he subsequently sold to Karen John.

> Within the time period expressly warranted by Advance, the battery ceased to function. Joseph John, on behalf of his wife, Karen John, sought to obtain relief from Advance regarding the defective battery. Advance refused, because John was not the original purchaser. In essence, Advance took the position that because John was not in privity with Advance by being the subsequent purchaser, the warranty failed. Advance is wrong.

> West Virginia has abolished the concept of both vertical and horizontal privity in a series of cases with the seminal opinions being *Dawson v. Canteen Corp.*, Syllabus 158 W.Va. 516, 212 S.E.2d 82 (1975), and *Sewell v. Gregory*, 371 S.E.2d 82, 179 W.Va. 585.

> Thus, independently of any statutory provisions, this Court has evolved the remedy of breach of implied warranty of fitness. Accordingly, Advance shall be required to abide by its warranty notwithstanding the person attempting to assert the warranty may not have been the original purchaser. The Plaintiffs' Motion for Summary Judgment is hereby granted.

Petitioners filed an appeal to the ruling of the circuit court granting summary judgment to the respondents. This Court rejected the direct petition for appeal on June 24, 2009. The petitioners then moved the circuit court again to certify the aforementioned question to this Court. The certified question was accepted by this Court on January 26, 2010.

## II.

## STANDARD OF REVIEW

■ This Court has held that "[t]he appellate standard of review of questions of law answered and certified by a circuit court is *de novo.*" Syllabus Point 1, *Gallapoo v. Wal–Mart Stores, Inc.*, 197 W.Va. 172, 475 S.E.2d 172 (1996). Under this plenary standard of review, we now proceed to consider the parties' arguments.

---

3. R. Civ. P. 54(b) states:

(b) *Judgment upon multiple claims or involving multiple parties.* When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, the order of other form of decision, however designated, which adjudicates fewer than all of the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

## III.

## DISCUSSION

Today we address the question of whether our elimination of the requirement of privity extends, by operation of our holding in *Dawson v. Canteen Corp.*, 158 W.Va. 516, 212 S.E.2d 82 (1975), to an express limited warranty given by a retailer to a purchaser. At issue is whether the retailer may limit such an express warranty to the purchaser only in view of the abolition of the requirement of privity of contract. A recurring theme throughout the circuit court's order and the position urged upon us by the respondents is that our case law eliminated the requirement of privity of contract in all warranty matters, including for limited express warranties such as at issue herein.

In *Dawson*, we detailed the demise of the privity requirement in West Virginia. The underlying cause of action in *Dawson* was products liability and the breach of implied warranties. The plaintiff in *Dawson* suffered gastroenteritis and other conditions after eating a hamburger bun tainted by rodent feces that was sold in a vending machine at his place of employment. The circuit court dismissed Dawson's complaint against the company supplying the burger because there was no privity between the two. In reversing the circuit court's dismissal of the case, we noted:

> The requirement of privity of contract in warranty actions in West Virginia began to erode with the passage of the Uniform Commercial Code. W. Va.Code, 46-2-318 (1963) eliminated the privity of contract requirement for warranty actions in what is known as the 'horizontal' chain of users. That section says:
>
>> 'A seller's warranty whether express or implied extends to any natural person who is in the family or household of his buyer or who is a guest in his home if it is reasonable to expect that such person may use, consume or be affected by the goods and who is injured in person by breach of the warranty. A seller may not exclude or limit the operation of this section.'
>
> This process of statutory erosion of the common law doctrine continued with the

passage of the 'West Virginia Consumer Credit and Protection Act,' Chapter 12, Acts of the Legislature, Regular Session, 1974, which eliminated the requirement of privity in the 'vertical' chain of distribution for Consumer transactions. The pertinent part of that chapter, now W. Va.Code, 46A-6-108 (1974), provides:

> 'Notwithstanding any other provision of law to the contrary, no action by a consumer for breach of warranty or for negligence with respect to goods subject to a consumer transaction shall fail because of a lack of privity between the consumer and the party against whom the claim is made. An action against any person for breach of warranty or for negligence with respect to goods subject to a consumer transaction shall not of itself constitute a bar to the bringing of an action against another person.'

*Dawson* at 519–520, 83–84.

In the sole syllabus point in *Dawson* we held that "[t]he requirement of privity of contract in an action for breach of an express or implied warranty in West Virginia is hereby abolished."

We later addressed the issue of privity in *Sewell v. Gregory*, 179 W.Va. 585, 371 S.E.2d 82 (1988). *Sewell* dealt with the warranties associated with the sale of residential real estate. The homeowners, who were the second owners of a residence, sued the homebuilder after their home was severely damaged by flooding. The homeowners alleged negligent construction and design of the home, as well as a breach of the implied warranty of habitability and fitness for use as a residence. The circuit court dismissed the homeowners' case, because there was no privity between the second owners of the home and the original contractor. In *Sewell*, we reaffirmed the elimination of the requirement of privity in actions arising from breaches of the implied warranties and allowed the subsequent purchasers' action to proceed.

In 2001, in a case involving the City of Salem's sewer system, we referred to the elimination of the requirement for privity in a case alleging professional engineering negligence and breaches of implied warranties

regarding the engineering firm's plans and specifications. We specifically noted the special duties owed to a contractor hired by the same entity hiring an engineering group and the relationship between the contractor and the engineering firm, even when there was no direct contract between the two. *Eastern Steel Constructors, Inc. v. City of Salem*, 209 W.Va. 392, 549 S.E.2d 266 (2001).

All of the above-cited cases are actions based upon some theory of product or professional liability, and all of the plaintiffs therein sought economic damages based upon the breaches of implied warranties related to the sale of such products. None of these cases involved a request for replacement of a product pursuant to an limited express warranty that by its very terms contained a limitation on its longevity as well as its applicability to only the original purchaser.

Here we consider an limited express warranty given by a retailer to a purchaser, not an implied warranty. *Causes of Action* § 2–313 at § 2 (2007) defines an express warranty as "... a warranty which is created by the making of express representations concerning the subject of the warranty, the terms of which are determined by the substance or content of those representations." Our U.C.C. further provides that "express warranties by the seller are created as follows: Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation of promise." *West Virginia Code* § 46–2–313(1)(a)(2007). As such, the notion of an express warranty is founded squarely on contractual bargaining notions, as opposed to the notion of an implied warranty, which "rest[s] so clearly on a common factual situation or set of conditions that no particular language or action is necessary to evidence them and they will arise in such a situation unless unmistakably negated." Commentary to *West Virginia Code* § 46–2–313.

The state's U.C.C. provides some guidance in terms of whether a warranty is transferrable. *West Virginia Code* § 46–2–318, provides that "[a] seller's warranty whether express or implied extends to any natural person who is in the family or household of his buyer or who is a guest in his home if it is reasonable to expect that such person may use, consume or be affected by the goods and who is injured in person by breach of the warranty. A seller may not exclude or limit the operation of this section." It was upon this section of the code that the *Dawson* court relied to reach the landmark holding we consider herein.

The respondents further assert that the West Virginia Consumer Credit and Protection Act[4] and especially Article 6, which deals with general protections afforded to consumers, prohibits the limitation of any consumer warranty on the basis of lack of privity of contract. *W. Va.* Code § 46A–6–108(a) states, in pertinent part:

> Notwithstanding any other provision of law to the contrary no action by a consumer for breach of warranty or for negligence with respect to goods subject to a consumer transaction shall fail because of a lack of privity between the consumer and the party against whom the claim is made ...

We first address whether the respondents are in fact consumers within the definitions section of this article such that they are entitled to general consumer protections for consumers. *W. Va.* § 46A–6–102(b) defines consumer as follows:

> ... a natural person to whom a sale or lease is made in a consumer transaction, and a "consumer transaction" means a sale or lease to a natural person or persons for a personal, family, household or agricultural purpose.

Under this definition, only McMahon is the "consumer" in terms of the sale of the battery. Karen John is not "a natural person to whom a sale or lease is made in a consumer transaction," as it relates to the sale of the battery by the petitioners. Karen John had no direct relationship to Advance in regard to the battery that ceased to operate in the car she purchased from Scott McMahon. As such, she did not participate in a consumer

---

4. *W. Va.Code* § 46A–1–101, *et seq.*

transaction with Advance relating to the purchase of the failed battery.

With Karen John not being a "consumer," we return to the language of the limited express warranty of Advance as it relates to Scott McMahon. The respondents contend that under our holdings in *Dawson* and its progeny, and the elimination of the notion of privity in express and implied warranties, there can be no limitations on Advance's warranty. We disagree. As noted by the petitioner, limited express warranties are commonplace throughout the country, and have been upheld as they relate to sprinkler systems,[5] fencing,[6] bedding[7] and countless other products.

The respondents argue that Advance is not able under West Virginia law to limit the terms of an express warranty it chooses to extend to initial purchasers. If this were the case, what incentive does any retailer have in making any express warranty? The simple truth is that retailers do not have to provide express warranties for their products. They may sell their wares without them, forcing the consumer to rely only upon those implied warranties created by statute or our body of case law.

While our holding in *Dawson* would appear, at first glance, to apply to all express and implied warranties, we believe that the application of the *Dawson* holding should be limited to actions that are essentially product liability claims, consistent with the facts then before this Court. Nothing in *Dawson* or its progeny suggests that our holding in *Dawson* should extend to the $49 consumer transaction between Advance and Mr. McMahon or the subsequent motor vehicle transaction between Mr. McMahon and Ms. John. To expand *Dawson* to Advance's limited express warranty herein would essentially have this Court rewrite the stated limitation of the warranty itself and thereby rendering the bargained-for limitations by the parties meaningless.

We hold that *W. Va.Code* § 46A–6–108(a) does not apply to suits for breach of a limited express warranty by subsequent purchasers where the limited express warranty involved specifically limits its availability to original purchasers. Because it is permissible for a retailer to create a limited express warranty, the conclusion reached in this case must be guided by the words of the limited express warranty of Advance. The limited express warranty clearly and unambiguously spelled out a specific time during which the battery would be warranted by Advance, as well as the appropriate remedy available to the purchaser seeking action under the warranty. The limited express warranty also clearly and unambiguously limited the availability of the remedy to the original purchaser who held the original transactional receipt. At the moment the original purchaser sold the battery, Advance's limited warranty, by its express terms, ceased to exist.

## IV.

### CONCLUSION

Based on the foregoing, we answer the certified question in the negative. Accordingly, we remand this matter to the Circuit Court of Ohio County for further proceedings consistent with this opinion.

**Certified question answered.**

Chief Justice DAVIS concurs and reserves the right to file a separate opinion.

Justice WORKMAN dissents and reserves the right to file a separate opinion.

Justice KETCHUM dissents and reserves the right to file a separate opinion.

DAVIS, Chief Justice, concurring:

In this case, the majority of the Court has determined that merchants can create express warranties that limit repair or replacement of goods to the original purchaser. I agree completely with the conclusion of the majority opinion and its legally sound reason-

---

5. *St. Paul Mercury Ins. Co. v. The Viking Corporation,* 539 F.3d 623 (7th Cir.2008).

6. *Nebraska Plastics, Inc. v. Holland Colors Americas, Inc.,* 408 F.3d 410 (8th Cir.2005).

7. *Stearns v. Select Comfort Retail Corp.,* 2008 WL 4542967 at *4 (N.D.Cal.)

ing. I have chosen to write separately to show how other courts have addressed the issue and to comment upon the dissenting opinion's mischaracterization of the relevant law.

## No Court in the Country Has Invalidated an Express Warranty That Limited Replacement or Repair of a Product to the Original Purchaser

The first thing that must be understood about the majority opinion in this case is the limitation of its holding. This case presented a simple issue of whether Advance Stores could create an express warranty that limited replacement or repair of a battery to the original purchaser. This case did not address the issue of whether a claim could be asserted against Advance Stores by Ms. John, on the ground that the battery caused an actual physical injury to her or her vehicle. The latter issue is outside the scope of the holding in the majority opinion and is controlled by the decision of this Court in *Dawson v. Canteen Corp.*, 158 W.Va. 516, 212 S.E.2d 82 (1975), and its progeny. The majority opinion stands for the proposition that a merchant can sell a product and have an express warranty that limits its replacement or repair to the original buyer. Thus, the ablution of privity, by *Dawson* and its progeny, for a claim of physical injury or property damage by a product was not relevant in this case.

The dissent has articulated unsupportable arguments which, in essence, state that, under *Dawson* and its progeny, W. Va.Code § 46A–6–108(a) (1987) (Repl.Vol.2006) prohibits Advance Stores from creating an express warranty that limits replacement or repair of a product to the original buyer. Neither the statute nor *Dawson* and its progeny supports such an assertion. West Virginia Code § 46A–6–108(a) states:

> (a) Notwithstanding any other provision of law to the contrary, no action by a consumer for breach of warranty or for negligence with respect to goods subject to a consumer transaction shall fail because of a lack of privity between the consumer and the party against whom the claim is made. An action against any person for breach of warranty or for negligence with respect to goods subject to a consumer transaction shall not of itself constitute a bar to the bringing of an action against another person.

The intent of this statute is to allow a cause of action for injury to a consumer or his/her property against any company involved in the manufacture or distribution of a product, even though the consumer did not purchase the product from the manufacturer or other company in the distribution chain. However, no language in this statute expressly or implicitly states that a merchant cannot create an express warranty that limits replacement or repair of a product to the *original purchaser*. The decision in *Dawson* and its progeny have interpreted the statute only to mean that a person not in privity with a manufacturer or distributor can sue the same for physical injury or property damage caused by the product. *See Taylor v. Ford Motor Co.*, 185 W.Va. 518, 520, 408 S.E.2d 270, 272 (1991) ("[A] person injured as a result of breach of an implied or express warranty can sue for his personal injury based on a breach of such warranties."); Syl. pt. 6, *Sewell v. Gregory*, 179 W.Va. 585, 371 S.E.2d 82 (1988) ("Implied warranties of habitability and fitness for use as a family home may be extended to second and subsequent purchasers for a reasonable length of time after construction, but such warranties are limited to latent defects which are not discoverable by the subsequent purchasers through reasonable inspection and which become manifest only after purchase.").[1] Moreover, no court "has ever held that privity of contract is unnecessary to enforce an express warranty. Indeed, because an express warranty is a term of the contract itself ..., privity of contract is necessary for a remote purchaser to enforce a manufacturer's express warranty." *Heritage Res., Inc. v. Cat-*

---

1. It should be noted that the dissent in *Sewell* argued that the majority opinion therein misconstrued *Dawson*, because *Dawson* was only applicable to personal goods. *See Sewell*, 179 W.Va. at 590, 371 S.E.2d at 87 (Neely, J., dissenting)

("Clearly, the majority has misconstrued our decision in *Dawson*, which was restricted to goods which are mass produced and mass distributed.").

*erpillar Fin. Servs. Corp.*, 284 Mich.App. 617, 774 N.W.2d 332, 343 n. 12 (2009).

It has been correctly observed that "[t]he rationale for eliminating the requirement of privity in [certain] warranty actions recognized by the courts does not extend to a total elimination of privity in all actions[.]" *Copiers Typewriters Calculators, Inc. v. Toshiba Corp.*, 576 F.Supp. 312, 323 (D.Md.1983). In other words, " '[p]rivity of contract remains an essential ingredient ... in a breach of express warranty action not involving personal injury [or property damage], because privity between the plaintiff and defendant is requisite to maintain a contract action[.]' " *Copiers Typewriters*, 576 F.Supp. at 323 (quoting *Addressograph–Multigraph Corp. v. Zink*, 273 Md. 277, 329 A.2d 28, 31 (1974)). Indeed, it has been observed that "[c]ourts have [only] relaxed the privity requirement where the express warranty was clearly intended to extend coverage to subsequent owners." *Federal Ins. Co. v. Lazzara Yachts of N. Am., Inc.*, No. 8:09–CV–607–T–27MAP, 2010 WL 1223126, at *6 (M.D.Fla. Mar.25, 2010). In other words, unlike the dissent in the instant case, the majority view around the country is "that the benefit of a warranty does not ordinarily run with a product on its resale so as to give the subsequent purchaser any right of action thereon as against the original seller." *Johnson v. Anderson Ford, Inc.*, 686 So.2d 224, 228 (Ala.1996). *See TD Props., LLC v. VP Bldgs., Inc.*, 602 F.Supp.2d 351, 360 n. 5 (D.Conn.2009) ("In the Court's view, this is a form of economic loss because the Plaintiff seeks recovery for the value and costs of repair for the allegedly defective goods.... There is no indication that the Plaintiff's 'other property' [was] damaged.... Therefore, the privity requirement is not waived in this case."); *Texas Processed Plastics, Inc. v. Gray Enters., Inc.*, 592 S.W.2d 412, 415 (Tex.Civ.App.1979) ("[T]he rule has evolved that in situations involving solely economic loss based upon breach of express warranty, privity of contract between the parties is required. In the case at bar appellees' suit was brought to recover damages based upon a breach of express warranty, *i.e.*, a suit sounding on contract for economic loss rather than in tort for injuries to person or property. Therefore,

in order for appellee ... to recover under a theory of breach of express warranty from appellant ..., privity of contract must exist between the parties.").

For example, in the case of *Haas v. DaimlerChrysler Corp.*, 611 N.W.2d 382 (Minn.Ct. App.2000), the defendant automobile dealer limited express warranties to original purchasers. In order for subsequent purchasers to obtain the benefits of the express warranties, the subsequent purchasers had to pay a fee. The plaintiff filed a class action against the defendant for failing to honor the original express warranties without an additional fee. The plaintiff argued that limiting the express warranties to original purchasers violated state and federal law. The trial court disagreed and dismissed the case. On appeal, the appellate court agreed with the dismissal. In the single syllabus point of the opinion, the appellate court held: "An automobile manufacturer's clearly stated warranty limitation requiring the second purchaser of a vehicle to pay a $150 fee to transfer the remaining warranty coverage does not violate either the federal Magnuson–Moss Warranty Act or the Uniform Commercial Code." Syl., *Haas, id.* The opinion addressed the state Uniform Commercial Code claim as follows:

> [Plaintiff] argues that section 2–318 of the UCC prevents Chrysler from charging the $150 transfer fee. Minnesota's version of that statute provides as follows:
>
>> A seller's warranty whether express or implied extends to any person who may reasonably be expected to use, consume or be affected by the goods and who is injured by breach of the warranty. A seller may not exclude or limit the operation of this section.
>
> Minn.Stat. § 336.2–318 (1998). [Plaintiff] contends that the statute by its terms extends the warranty to persons who would reasonably be expected to use the vehicle, including second-hand purchasers such as she....
>
> The flaw in [plaintiff's] argument is that it confuses the first-party right to receive services under the warranty with the third-party statutory right to recover for damages caused by breach of the warran-

ty.... Until [plaintiff] is injured by a breach of the warranty, section 2–318 grants her no third-party beneficiary rights.

The warranty in this case specifically provides that it "is extended only to the first buyer/owner of the vehicle." The warranty goes on to provide that the vehicle's second buyer can transfer any remaining warranty coverage by having the Chrysler dealer submit a "Transfer of Coverage Application" at a cost to the second purchaser of $150.

Those contractual terms define and limit any rights [plaintiff] may have as a third-party beneficiary of the warranty....

Because the warranty specifically provides that subsequent purchasers may only assume any remaining warranty coverage on the payment of a $150 fee, charging [plaintiff] the $150 fee was not a "breach" of the warranty. Without a breach of the warranty, [plaintiff] cannot be a person "who is injured by breach of the warranty." As a result, section 2–318 does not grant [plaintiff] the right to assume the warranty without paying the $150 transfer fee. The district court therefore did not err in concluding that [plaintiff] failed on this point to state a claim for which relief could be granted.

*Haas,* 611 N.W.2d at 385–86.

Similarly, in *Lankarani v. Jeld–Wen, Inc.,* No. 98, 208, 2008 WL 4471685 (Kan.Ct.App. Oct. 3, 2008), plaintiffs sued the defendant window manufacturer because of defects in the windows of their home. The defendant moved for summary judgment. One of the grounds for summary judgment was that the plaintiffs could not enforce the express warranty on the windows because it was limited to the original homeowner/purchasers. The trial court rejected the argument on the grounds that privity of contract was abolished by enactment of the State's Consumer Protection Act. The defendant appealed the ruling. The appellate court found that the state's Consumer Protection Act *did not*

abolish privity under the facts of the case presented: [2]

The statute at issue here is part of the Kansas Consumer Protection Act, K.S.A. 50–623, *et seq.* It states: "Notwithstanding any provision of law, no action for breach of warranty with respect to property subject to a consumer transaction shall fail because of a lack of privity between the claimant and the party against whom the claim is made." K.S.A. 50–639(b).
* * * *

Comments to K.S.A. 50–639(b) indicate that concepts of horizontal and vertical privity are eliminated and that the subsection allows suits by bystanders who suffer loss as a result of a defective product. Importantly, the comment references a specific comment of our version of the UCC–K.S.A. 84–2–318.

That statute states that a seller's warranty extends to any natural person who may reasonably be expected to use or be affected by the goods and "who is injured in person" by breach of the warranty.

Clearly, the homeowner in the present case cannot recover under K.S.A. 84–2–318 because they [sic] were not injured in person—they [sic] suffered only economic loss as a result of the alleged breach.
* * * *

We emphasize that an express warranty is a creature of contract.... Accordingly, a seller such as [defendant] is free to limit, as a matter of contract, an express warranty to the first/original purchaser if it chooses to do so....

An express warranty is a promise made in addition to any implied warranties arising out of law. Here, the express warranty promised to repair or replace defective windows for 10 years. But [defendant] chose to extend this warranty only to the supplier/contractor and the first buyer of the home. Such a promise does not violate the law.

*Lankarani,* 2008 WL 4471685, at *2–3 (citation omitted).

---

**2.** The relevant provision of the Consumer Protection Act of Kansas is similar to W. Va.Code § 46A–6–108(a) (1987) (Repl.Vol.2006).

Another relevant case is *Goodman v. PPG Industries, Inc.*, 849 A.2d 1239 (Pa.Super.2004) which was brought as a class action against a manufacturer of a wood preservative product. The wood preservative was sold to a lumber company that used the product to treat windows and doors. The manufacturer provided an express warranty to the lumber company that guaranteed the wood preservative would protect wood for twenty-six years. The plaintiffs sued the manufacturer solely on the theory of breach of express warranty after their doors and windows became damaged. The trial court dismissed the action on the grounds that the express warranty was limited to the lumber company. The plaintiffs appealed. On appeal, the plaintiffs argued that the requirement of privity was abolished in that state, and, therefore, they should be allowed to sue for breach of express warranty. The appellate court agreed with the plaintiffs that, in Pennsylvania, "privity of contract is not required between the party issuing a warranty and the party seeking to enforce the warranty." *Goodman*, 849 A.2d at 1246 n. 6. However, the appellate court also agreed with the trial court that "[l]ack of privity between the manufacturer and the ultimate consumer in the actual sales transaction is irrelevant." *Goodman*, 849 A.2d at 1242. The appellate court found that the plaintiffs could not enforce the express warranty because it was limited to the lumber company:

> In our view, a manufacturer who is willing to make a specific and ambitious express warranty (such as the one in the instant case) must be able to retain some measure of control over both the class of people to whom it is willing to extend the warranty, and the precise parameters of the warranty that it will be obliged to honor. Similarly, given that express warranties are based on the notion of offer and acceptance, it would appear incongruous to allow third parties the benefit of an express warranty when no evidence exists that they were aware of the terms of the warranty or the identity of the party issuing the warranty....

The express warranty in the instant case went beyond the implied warranty of merchantability, and specifically provided that

> [the preservative] would protect against wood rot for at least 26 years. Moreover, this specific warranty formed a basis of the bargain between [defendant] and [the lumber company]. Here, however, it is clear that [defendant] extended its warranty only to [the lumber company]. [Defendant] did not extend its express warranty to [plaintiffs], either directly, or indirectly through an intermediary.... Under the facts of this case, we conclude that [plaintiffs] cannot as a matter of law maintain their action for breach of express warranty against [defendant].

*Goodman*, 849 A.2d at 1245–46.

Likewise, the case of *Barre v. Gulf Shores Turf Supply, Inc.*, 547 So.2d 503 (Ala.1989), involved the resale of a lawnmower. In *Barre*, the plaintiff purchased a lawncare business. The purchase included a lawnmower that had been sold by the defendant to the former owner of the lawncare business. As a result of operating problems with the lawnmower, the plaintiff sued the defendant seller. The plaintiff's complaint alleged liability theories that included, negligent repair work, breach of the original express warranty, and breach of the extended warranty. The plaintiff sought damages for loss of business and profits due to the repeated mechanical failures of the lawnmower. The trial court granted the defendant's motion for summary judgment on the grounds of lack of contractual privity. The plaintiff appealed and argued that, as the buyer of the lawncare business, privity extended to him. The appellate court disagreed, explaining as follows:

> The plaintiff must prove privity of contract in an action on an express warranty where no injuries to natural persons are involved....
>
> * * * *
>
> ... The [plaintiff] may not maintain an action on an express warranty, where no injuries to natural persons are involved, even though [defendant] had given the express warranty to [plaintiff's] vendor, Thompson/T & T Yard Care. The express warranty on the mower given to Thompson/T & T Yard Care did not follow with

the mower on its resale automatically. There is no evidence that [defendant], through its agents, even knew that [plaintiff] was the owner of the mower.... There is no evidence that [defendant] intended to extend the express warranties to him. Therefore, we find no basis for establishing privity of contract, and [plaintiff's] breach of warranty action must fail. *Barre*, 547 So.2d at 504–05 (citations omitted). *See also St. Paul Mercury Ins. Co. v. The Viking Corp.*, 539 F.3d 623, 626 (7th Cir.2008) ("[P]rivity was lacking here because [defendant's] warranty was limited to the original purchaser, and did not encompass Johnson Bank or, by extension, its subrogee [the plaintiff]."); *Austin v. Will–Burt Co.*, 232 F.Supp.2d 682, 687 (N.D.Miss.2002) ("If any express warranty was rendered, the more likely party to such a warranty would be Quality Coach, to whom [defendant] sold the mast, not to [plaintiffs]. [Defendant] was not even aware that [plaintiffs] had acquired the mast nearly ten years after [defendant] made its original sale to Quality Coach.... As such, the court finds that no express warranty could have existed between [defendant] and the plaintiffs."); *Stratos v. Super Sagless Corp.*, No. CIV. A. 93–6712, 1994 WL 709375, at *7 (E.D.Pa. Dec. 21, 1994) ("Because the scope of the limited warranty did not extend beyond the original consumer purchaser, and because Plaintiff offers no alternative interpretation of the warranty language, I will grant Defendant's motion to the extent Plaintiff's breach of express warranty[.]"); *Tokio Marine & Fire Ins. Co., Ltd. v. Bell Helicopter of Textron, Inc.*, No. Civ. A. H–80–1074, 1982 WL 623495, at *15 (S.D.Tex. July 8, 1982) ("Because there is no issue as to any material fact as to the disclaimers and because we find as a matter of law that the disclaimer in the sales warranties effectively limited [defendant's] liability to purchasers ... we are of the opinion that [defendant] breached no warranties, either express or implied, to [plaintiff] and that defendant's motion for summary judgment as to plaintiffs' breach of warranty claim should be granted."); *Blanco v. Baxter Healthcare Corp.*, 158 Cal.App.4th 1039, 70 Cal.Rptr.3d 566, 582 (2008) ("The general rule is that privity of contract is required in an action for breach of either express or implied warranty and that there is no privity between the original seller and a subsequent purchaser who is in no way a party to the original sale." (internal quotations and citation omitted)); *Intergraph Corp. v. Stearman*, 555 So.2d 1282, 1283 (Fla.Dist.App.Ct.1990) ("We find that the award of compensatory damages to Stearman P.A. in the amount of $34,000 for breach of express warranties cannot stand because there was a complete absence of privity between Stearman P.A. and the seller of the computer system, Intergraph. Privity is required in order to recover damages from the seller of a product for breach of express or implied warranties."); *Ramerth v. Hart*, 133 Idaho 194, 983 P.2d 848, 851 (1999) ("[P]rivity of contract is required in a contract action to recover economic loss for breach of implied warranty."); *Bagel v. American Honda Motor Co., Inc.*, 132 Ill. App.3d 82, 87 Ill.Dec. 453, 477 N.E.2d 54, 59 (1985) ("Because plaintiff was not in privity of contract with American Honda and purchased the used motorcycle from a seller who was not a merchant, plaintiff cannot claim breach of implied warranty of merchantability. We need not consider, therefore, American Honda's argument that the terms of its express warranty limited its implied warranty of merchantability to the first purchaser for six months or 6,000 miles."); *Tomka v. Hoechst Celanese Corp.*, 528 N.W.2d 103, 107 (Iowa 1995) ("Even if [plaintiff] can be considered a buyer, he did not buy the product from the defendant manufacturer. He purchased Finaplix from the veterinarians. Therefore, [plaintiff] was not in privity with [defendant]."); *Renaissance Leasing, LLC v. Vermeer Mfg. Co.*, 322 S.W.3d 112, 123 (Mo. 2010) ("[A]n express warranty of fixed duration in a sale of personal property runs with the property on re-sale unless the warranty clearly limits coverage to the first purchaser."); *Thompson v. Rockford Mach. Tool Co.*, 49 Wash.App. 482, 744 P.2d 357, 364 (1987) ("Similarly, here, no privity of contract exists between the Thompsons and Boeing. Thus, the implied warranty claim was properly dismissed.").

In sum, although courts around the country have moved away from requiring privity

to enforce implied warranties when a product injures a person or property, courts permit merchants to grant express warranties for replacement or repair of products that can be enforced only by *the original purchaser*. The majority opinion in this case is consistent with the decisions of other courts around the country.

In view of the foregoing, I concur.

WORKMAN, Justice, dissenting:

The majority holds that "W. Va.Code § 46A–6–108(a) does not apply to suits for breach of a limited warranty by subsequent purchasers where the limited express warranty involved specifically limits its availability to original purchasers." Because I find that the holding conflicts with existing West Virginia case law and statutory law, I dissent.

The first hurdle that the majority opinion fails to overcome is this Court's long-standing decision in *Dawson v. Canteen Corp.,* 158 W.Va. 516, 212 S.E.2d 82 (1975). In *Dawson,* the Court addressed the same two statutory provisions that are currently before the Court. *See* W. Va.Code § 46–2–318 (2007) and W. Va.Code § 46A–6–108(a) (2006). West Virginia Code § 46–2–318 is found in the West Virginia Uniform Commercial Code ("UCC") and abolishes horizontal privity as follows:

> A seller's warranty whether express or implied extends to any natural person who is in the family or household of his buyer or who is a guest in his home if it is reasonable to expect that such person may use, consume or be affected by the goods and who is injured in person by breach of the warranty. A seller may not exclude or limit the operation of this section.

*Id.* The second statutory provision is found in the West Virginia Consumer Credit and Protection Act ("CPA"). West Virginia Code § 46A–6–108(a) provides:

> Notwithstanding any other provision of law to the contrary, no action by a consumer for breach of warranty or for negligence with respect to goods subject to a consumer transaction shall fail because of a lack of privity between the consumer and the par-

ty against who the claim is made. An action against any person for breach of warranty or for negligence with respect to goods subject to a consumer transaction shall not of itself constitute a bar to the bringing of an action against another person.

*Id.* The Court in *Dawson* found that the Legislature, in enacting the foregoing provision, intended to abolish vertical privity. 158 W.Va. at 519–20, 212 S.E.2d at 83–84.

After acknowledging the erosion of privity by the passage of the these two statutory provisions, the Court, in a very succinct opinion in *Dawson,* held in the sole syllabus point that "[t]he requirement of privity of contract in an action for breach of an express or implied warranty in West Virginia is hereby abolished." *Id.* at 516, 212 S.E.2d at 82, syllabus. This holding was very broadly written with no equivocation.

In the majority opinion, there is no recognition of, nor any reconciliation with the Court's holding in *Dawson,* which must occur for the majority to reach the result it did. Rather, the majority opinion provides that the Court, in *Dawson,* only relied upon West Virginia Code § 46–2–318, stating that "[i]t was upon this section [referring to W. Va. Code § 46–2–318] of the code that the *Dawson* court relied to reach the landmark holding we consider herein." This statement is disingenuous at best. The Court relied equally upon both West Virginia Code § 46–2–318 and West Virginia Code § 46A–6–108(a) in reaching its holding in *Dawson* and the Court did not hinge its decision on the type of warranty or claim involved.

Moreover, the majority opinion also provides that "[w]hile our holding in *Dawson* would appear, at first glance, to apply to all express and implied warranties, we believe that the application of the *Dawson* holding should be limited to actions that are essentially product liability claims, consistent with the facts then before this Court." The majority is at least recognizing a limitation or modification of *Dawson,* however, this limitation occurs without any explanation. Instead, the majority summarily concludes that "[n]othing in *Dawson* or its progeny suggests that our holding in *Dawson* should extend to

the $49 consumer transaction between Advance and Mr. McMahon or the subsequent motor vehicle transaction between Mr. McMahon and Ms. John." The fallacy of this conclusion is that there is nothing in *Dawson* that even remotely suggests that it does not apply to a consumer transaction like the one before the Court involving an express warranty. Thus, the majority effectively has overruled *Dawson*, in part, and fails to recognize what it has done.

Furthermore, the majority's analysis of the provisions of West Virginia Code § 46A–6–108(a) is flawed. In the opinion, the way the majority attempts to circumvent the privity requirement being abolished is by finding that the only Mr. McMahon, the original purchaser of the battery, is a "consumer" as that term is defined in the CPA. As the majority reasons in the opinion:

> Karen John is not "a natural person to whom a sale or lease is made in a consumer transaction," as it relates to the sale of the battery by the petitioners. Karen John had no direct relationship to Advance in regard to the battery that ceased to operate in the car she purchased from Scott McMahon. As such she did not participate in a consumer transaction with Advance relating to the purchase of the failed battery.

An examination of Karen John's role under the relevant statutory definitions, however, reveals that she was definitely a "consumer" involved in a "consumer transaction," as defined by the West Virginia Legislature. Both of these terms are defined in West Virginia Code § 46A–6–102(2) (2006) as "a natural person to whom a sale or lease is made in a consumer transaction and a 'consumer transaction' means a sale or lease to a natural person or persons for personal, family, household or agricultural purpose." *Id.* Karen John's was a "a natural person to whom a sale ... [was] made ... for personal, [or] family purpose." *Id.* In other words, Karen John bought the battery in the car as part of a sale for personal or family purpose. *Id.* The majority's determination that Ms. John's was not a consumer involved in a consumer transaction as set forth in the statute will have far-reaching implications to the

availability of the CPA to the class of individuals—consumers—that it was enacted to protect.

Furthermore, the majority ignores the fact that there is no requirement in the foregoing definition that the sale be made by the original seller or that there be any relationship with the original seller. Likewise, there is no such requirement in the provisions of West Virginia Code § 46A–6–108. Succinctly stated, the majority opinion reinstates the privity requirement which was abolished by both the Legislature in enacting West Virginia Code § 46A–6–108 and the Court in *Dawson*. In so doing, the majority's holding is that because there is no privity between Karen John and Advanced, there is no cause of action for breach of express warranty. This is not only judicial activism in its true sense, but it is anti-consumer judicial activism in an area of the law that the Legislature has clearly enunciated, and it tosses out prior case law of this Court with no real explanation. Because of the majority's dramatic and poorly-reasoned departure from well-established case law and statutory law, I respectfully dissent.

KETCHUM, J., dissenting:

I agree with Justice Workman's dissent. I write separately because I believe that there are significant legal and factual questions which—when this case is remanded and over and done—may vitiate the majority's opinion.

The record is clear that the express replacement warranty did not contain language limiting its availability to an original purchaser. The original purchaser bought the car battery and was given a receipt that contained the following warranty language: "24 MO. FREE REPL 72 MO. PRO." However, at the bottom of the receipt (approximately ten lines below the above-quoted line) was the following:

> Visit us at www.advanceautoparts.com Receipt Required For Returns Warranty Information Available

If a person goes to Advance's internet website, then they might find the limitation on the car battery warranty that the majority opinion relies upon. That limitation says

(with emphasis added) that "[y]our warranty begins the day you purchase the battery and expires at the end of the warranty period printed on your original receipt, *or when you sell your vehicle,* whichever comes first." This warranty limitation was not provided to the original purchaser at the time of the sale and was not set forth in the written receipt.

Advance's position that it may limit a warranty through terms placed on the internet, but not provided to the consumer at the point of purchase, raises a number of issues. For instance, a consumer without internet access would not be able to obtain these warranty limitations.[1] More importantly, because the warranty was on Advance's website, it could modify the warranty on a daily basis without providing notice to the consumer. Counsel for the Plaintiffs raised this issue at a hearing before the circuit court, stating:

> We've seen warranty information that's different, substantially different, materially different than what they've presented. And they've not said that that warranty was ever produced to the purchaser, or how it was produced to the purchaser.

> There's level after level after level of question, Judge, as to whether that warranty was ever conveyed, how it was conveyed, whether it was meaningfully conveyed, whether there are other warranties.

One issue that was not raised before the circuit court or addressed in the majority opinion is the effect of the Magnuson–Moss Warranty Act, 15 U.S.C. § 2301, *et seq.* This Act appears to plainly void Advance's attempt to limit its express warranty contained

on the purchaser's receipt. Magnuson–Moss was enacted in 1975 "to improve the adequacy of information available to consumers, prevent deception, and improve competition in the marketing of consumer products." 15 U.S.C. § 2302(a) [1975]. The Act was designed (1) to promote consumer understanding; (2) to insure basic protection for consumers purchasing consumer products with written warranties; (3) to make it easier for consumers to obtain court enforcement of a warranty by providing for attorney fees and costs; and (4) to stimulate the production of more reliable products by requiring clear disclosures of what the warranty promises. *See Skelton v. Gen. Motors Corp.,* 500 F.Supp. 1181 (N.D.Ill.1980) *rev'd on other grounds* 660 F.2d 311 (7th Cir.1981).[2]

Magnuson–Moss applies to written warranties covering "consumer products." The Act defines "consumer products" as "any tangible personal property which is distributed in commerce and which is normally used for personal, family or household purposes." 15 U.S.C. § 2301(1).[3] A car battery falls under this definition and Magnuson–Moss is applicable in this case.

Advance's internet document purporting to limit its express written warranty fails to comply with a number of requirements mandated by Magnuson–Moss. Particularly relevant in the case *sub judice* is Magnuson–Moss's single document requirement, which states that any "written warranty ... shall clearly and conspicuously disclose in a single document in simple and readily understood language" nine specific items of information.[4]

---

1. While the majority opinion states that this warranty information was also available at the store, there is no evidence in the record that the original purchaser was given this information at the time of the sale or told that it was available.

2. This Court discussed the circumstances that led to the creation of the Magnuson–Moss Act in *Adams v. Nissan Motor Corp.,* 182 W.Va. 234, 237, 387 S.E.2d 288, 291 (1989), stating:

   The passage of the Magnuson–Moss Act appears to be the result of extensive study of the numerous problems with consumer warranties, including inadequate coverage and difficulty in obtaining warranty repairs. *See* Brickey, *The Magnuson–Moss Act–An Analysis of The Efficacy of Federal Warranty Regulation as Consumer Protection Tool,* 18 Santa Clara

L.Rev. 73 (1978); Denicola, *The Magnuson–Moss Warranty Act: Making Consumer Product Warranty a Federal Case,* 44 Fordham L.Rev. 273 (1975), Miller and Kanter, *Litigation Under Magnuson–Moss: New Opportunities in Private Action,* 13 U.C.C.L.J. 10 (1980).

3. The definition includes "property which is intended to be attached to or installed in any real property without regard to whether it is so attached or installed." 16 C.F.R. § 700.1(a) (1986).

4. The nine items that must be disclosed in a written warranty are: (1) the identities of the parties to whom the warranty is extended; (2) a clear description and identification of any parts of the product excluded from the warranty; (3) a

16 C.F.R. 701.3(a). Magnuson–Moss further requires that "the terms of any written warranty on a consumer product be made available to the consumer (or prospective consumer) prior to the sale of the product[.]" 15 U.S.C. § 2302(b)(1)(A).

In the present case, the warranty information was not contained in a single document. There was no warranty limitation in the written receipt the consumer received at the point of purchase. The limitation was set forth on Advance's website and was not made available to the consumer prior to or at the time of the sale. Advance's position is plainly at odds with Magnuson–Moss's requirements that all warranty disclosures be made in a single document, and that the terms of a written warranty be made available to the consumer prior to the sale.

Magnuson–Moss also states that a written warranty shall "clearly and conspicuously" designate the warranty as "full" or "limited." 15 U.S.C. § 2303. The receipt Advance gave to the original purchaser did not designate it as either a "full" or "limited" warranty. Because warranties are required to be designated as full or limited by Magnuson–Moss, warranties that fail to make this designation must be interpreted in the manner most favorable to the consumer. *Hughes v. Segal Enterprises, Inc.,* 627 F.Supp. 1231 (W.D.Ark.1986). In the present case, because the original receipt did not state that the 24–month free replacement period was further "limited", this warranty term should be construed as a "full" 24–month warranty. Therefore, the warranty on the receipt cannot be limited to the original purchaser.

There are numerous issues remaining for resolution below. Based on all of the foregoing, I respectfully dissent.

statement of what the warrantor will and will not do in case of defect, malfunction or other nonconformity of the product to the warranty; (4) the temporal boundaries of the warranty; (5) a step-by-step description of the procedure for consumers to obtain performance under the warranty; (6) information respecting the availability of any informed dispute settlement mechanism elected by the warrantor; (7) a statement identifying any limitation on the duration of the implied warranties; (8) a statement of exclusions or limitations on relief (such as incidental or consequential damages); and (9) a statement advising the buyer that the warranty confers specific legal rights, and that other rights may be conferred pursuant to state law. 16 C.F.R. 701.3(a)(1)-(9).